IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOE MITCHELL DORSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:05-CV-1239-F |
| ) | |
| MUNICIPAL COURT ANDALUSIA, et al., ) | |
| ) | |
| Defendants. ) | |

## DEFENDANT'S SPECIAL REPORT AND ANSWER

Defendant, Annette Cain ("Nurse Cain") (erroneously designated as "Annette King" in the plaintiff's complaint) submits her Special Report and Answer to the Court as follows:

### I. INTRODUCTION

The plaintiff filed his Complaint on December 30, 2005. The Complaint alleges, presumably, violations of his Eighth Amendment rights. On January 13, 2006, this Court ordered all defendants to submit a Special Report concerning the factual allegations made by the plaintiff in his Complaint.

### II. PLAINTIFF'S ALLEGATIONS

The plaintiff appears to be alleging that Nurse Cain failed to provide adequate or appropriate medical attention in violation of the Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Specifically, the plaintiff alleges that Nurse Cain denied the plaintiff medical attention upon his return to the Covington County Jail from Andalusia Regional Hospital ("ARH") after being treated at ARH for complaints of pain arising out of a fall down some stairs.[1]

---

[1] This statement of the Plaintiff's Allegations is based upon Plaintiff's Complaint and the undersigned's interpretation of the issues raised. If other issues are presented, Defendant requests that this Honorable Court grant Defendant an opportunity to answer and address those issues.

### III. NURSE CAIN'S ANSWER TO PLAINTIFF'S ALLEGATIONS

Nurse Cain denies the allegations made against her by the plaintiff as said allegations are untrue and completely without basis in law or fact. Nurse Cain denies that she acted, or caused anyone to act, in such a manner as to deprive the plaintiff of any right to which he was entitled. Plaintiff's Complaint fails to state a claim upon which relief can be granted. Nurse Cain raises the defenses of Eleventh Amendment immunity, qualified immunity, plaintiff's failure to comply with the Prison Litigation Reform Act and additional defenses presented below. Nurse Cain reserves the right to add additional defenses if any further pleading is required or allowed by the law.

### IV. SWORN STATEMENTS

Pursuant to Paragraph 2 of the Court's Order, Nurse Cain submits her own affidavit (Exhibit 1) and the affidavit of Millard McWhorter, M.D. (Exhibit 2), who are persons having knowledge of the subject matter of the Complaint. Nurse Cain also refers the Court to the affidavit of Sheriff Anthony Clark, which is attached as Exhibit C to Sheriff Clark's Special Report.

### V. STATEMENT OF FACTS

A. Background

1. Annette Cain ("Nurse Cain") has been licensed by the State of Alabama as an L.P.N. since 1982. From September 2005 to the present, she has been employed as an L.P.N. for Southern Health Partners, Inc. ("SHP") at the Covington County Jail in Andalusia, Alabama. In late November 2005, she became medical team administrator for SHP. (Cain Aff. at ¶¶ 2-3.)

2. Millard McWhorter, M.D. ("Dr. McWhorter") has been licensed to practice medicine in the state of Alabama since 1986. From January 1994 to July 1999, he was the medical director for the Central State Prison in Macon, Georgia. From October 1999 to July 2001, he was

the medical director for Fountain/Holman Correctional Facilities in Atmore, Alabama. From February 2002 to the present, he has been employed by SHP as the medical director of the Covington County Jail in Andalusia, Alabama. (McWhorter Aff. at ¶¶ 2-3.)

3.  SHP provides medical care to inmates in various jail facilities, including the Covington County Jail. During the entire time of plaintiff's incarceration in the Covington County Jail, health care services have been provided to the inmates by SHP pursuant to a contract between SHP and the Covington County Commission. Health care in the jail is provided under the direction of a medical team administrator as well as a medical director. During the period complained of by the plaintiff in this action, Dr. McWhorter was the medical director in the jail and Nurse Cain was the medical team administrator. (McWhorter Aff. at ¶ 4; Cain Aff. at ¶ 4.)

4.  When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit. (McWhorter Aff. at ¶ 5; Cain Aff. at ¶ 5.)

B.  <u>Chronology of the plaintiff's treatment</u>

5.  A true and correct copy of SHP's medical chart concerning the plaintiff is attached to Nurse Cain's Affidavit as Exhibit A. (Cain Aff. at ¶ 7.)

6.  On December 6, 2005, the plaintiff was booked into the Covington County Jail. On December 8, 2005, the plaintiff completed a medical screening form, wherein he mentioned a history of heart condition, mental health problems, ulcers and daily drug use. (Cain Aff. at ¶ 8.)

7.  On December 24, 2005, Nurse Cain received a telephone call from one of the correction officers at the jail, who reported that the plaintiff had fallen down some stairs. According

to the officer, the plaintiff had been able to get up with assistance but had complained of great pain all over. The plaintiff had been transferred to the emergency room of ARH, and had returned to the jail with a prescription for Motrin. Upon return to the jail, the plaintiff complained of general back pains, but had refused to get up for pill call. (Cain Aff. at ¶ 9.)

8.  Because Nurse Cain received this telephone call on Christmas Eve while she was not on shift, she wrote a late entry progress note on December 26, 2005, which documented her telephone call with the correction officer. (Cain Aff. at ¶ 10.)

9.  On December 25, 2005, Dr. McWhorter ordered that the plaintiff receive 800 mgs. of ibuprofen twice a day for seven days for his complaints of back pain. (McWhorter Aff. at ¶ 10.)

10.  On January 4, 2006, Dr. McWhorter saw the plaintiff in follow-up to the plaintiff's trip to ARH. The plaintiff complained that he had injured his lower back falling down stairs. Dr. McWhorter assessed the plaintiff as having a back contusion and ordered that the plaintiff continue taking the medication (ibuprofen) he was currently taking for back pain. (McWhorter Aff. at ¶ 11.)

C.  <u>The plaintiff was not denied medical care.</u>

11.  The plaintiff never completed a sick call slip for any problems related to any injury suffered from his fall down the stairs. In fact, the plaintiff has not completed any sick call slips requesting any medical attention or treatment since being booked into the jail. (Cain Aff. at ¶ 13; McWhorter Aff. at ¶ 12.)

12.  The plaintiff refused to take his morning dosage of ibuprofen on December 25, December 26, December 29, December 30, January 2 and January 3, 2005. He also refused to take his evening dose of ibuprofen on December 27, 2005. (Cain Aff. at ¶ 14; McWhorter Aff. at ¶ 13.)

13.   All necessary care provided to the plaintiff was appropriate, timely and within the standard of care. (Cain Aff. at ¶ 16; McWhorter Aff. at ¶ 15.)

14.   On no occasion was the plaintiff ever at risk of serious harm, nor was Nurse Cain or any member of the medical staff ever indifferent to any complaint that he made. (Cain Aff. at ¶ 17; McWhorter Aff. at ¶ 16.)

D.   <u>The plaintiff failed to exhaust administrative remedies.</u>

15.   At the time of the plaintiff's incarceration, the Covington County Jail had an inmate grievance procedure. (Clark Aff. at ¶ 4.) Grievances were required to be in writing and could be filed with any member of the jail staff. (*Id.*) Copies of grievance forms are kept in the inmate's jail file. (*Id.*) Jail policy provided an exception that allowed emergency grievances to be made orally. (*Id.*) It was a violation of jail policy to deny an inmate access to the grievance procedure. (*Id.,* at ¶ 6.) The plaintiff was aware of the grievance procedure. (*Id.* at ¶ 5.) The plaintiff never filed a grievance related to any of his claims. (*Id.* at 7.)

## VI.   LEGAL ARGUMENT

A.   <u>The Plaintiff's Claims are Barred by the Prison Litigation Reform Act for His Failure to Exhaust Administrative Remedies.</u>

The Prison Litigation Reform Act requires exhaustion of all available administrative remedies before an inmate may file a lawsuit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); *Booth v. Churner,* 532 U.S. 731, 733-34 (2001) (stating that 42 U.S.C. § 1997e(a) "requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions."). Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other

5

wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). The plaintiff in this case has failed to utilize two separate and distinct administrative remedies available to him. As a result, his claims are barred.

First, the plaintiff failed to properly utilize the grievance procedures provided at the local level in the Covington County Jail to address his claims prior to the filing of this lawsuit. The Covington County Jail had a grievance procedure. (Clark Aff. at 4.) The plaintiff never filed a grievance related to any of his claims. (Clark Aff. at ¶ 7.)

Second, the plaintiff has not alleged that he pursued any grievance through the State Board of Adjustment. See *Brown v. Tombs,* 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). Alabama law provides the opportunity to file a claim and proceed before the Alabama State Board of Adjustment pursuant to Ala. Code § 41-9-60 et seq.

Because the State provides an administrative remedy that the plaintiff failed to exhaust and the plaintiff failed to exhaust the Covington County Jail grievance procedure, the plaintiff's claims are barred by 42 U.S.C. § 1997e(a). See *Alexander v. Hawk,* 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of present action due to failure to exhaust administrative remedies).

B. <u>The Plaintiff's Claims Against Nurse Cain Are Due To Be Dismissed, Because Plaintiff Has Presented No Evidence That Nurse Cain Was Deliberately Indifferent to a Serious Medical Condition.</u>

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that Nurse Cain was deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). "A serious medical need is one that has been diagnosed by a

physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Kelley v. Hicks*, 400 F. 3d 1282, 1284 n. 3 (11th Cir. 2005). Where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985).

Indeed, in *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the United States Supreme Court held that medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Thus, the inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute an unnecessary and wanton infliction of pain." *(Id.* at 105-06.) Instead, it must be shown that there was a "deliberate indifference" to the serious medical needs of a prisoner. *(Id.* at 104.)

In addition, an inmate does not have a right to a *specific* kind of medical treatment. *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality] obtains such treatment is not a federal constitutional question*") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the plaintiff. See *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); *Westlake v. Lucas*, 537 F.2d

857, 860 n.5 (6th Cir. 1976) (stating "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments.").

In this case, there is absolutely no evidence from which a jury could find that Nurse Cain acted with deliberate indifference to any serious medical need of the plaintiff. The plaintiff alleges that he did not receive adequate medical attention upon his return to the jail on December 24, 2005 after having been treated at ARH for pain arising out of a fall down some stairs. Yet, on the day after the plaintiff's return to the jail--December 25, 2005--Dr. McWhorter ordered that the plaintiff receive ibuprofen for his pain. (McWhorter Aff. at ¶ 10.) Moreover, on January 4, 2006, Dr. McWhorter saw the plaintiff in followup to his trip to ARH, and ordered that he continued taking ibuprofen for his back pain. (*Id.* at ¶ 11.) The plaintiff's medical chart clearly reflects that the plaintiff received medical attention in followup to his trip to ARH. The chart also reflects that the plaintiff never completed a sick call slip for any problems related to any injury suffered from his fall down the stairs, and, in fact, has not completed any sick call slips requesting any medical attention or treatment since being booked into the jail. (Cain Aff. at ¶ 13; McWhorter Aff. at ¶ 12.) Finally, the plaintiff's medication administration record shows that he refused to take the ibuprofen prescribed for his back pain on numerous occasions in the days just prior to filing his complaint. (Cain Aff. at ¶ 14; McWhorter Aff. at ¶ 13.)

Nurse Cain and Dr. McWhorter have testified that all necessary care provided to the plaintiff was appropriate, timely and within the standard of care and that on no occasion was the plaintiff ever at risk of serious harm, nor was Nurse Cain or any member of the medical staff ever indifferent to any complaint that the plaintiff made. (Cain Aff. at ¶¶ 16-17; McWhorter Aff. at ¶¶ 15-16.) Because

the plaintiff has offered no evidence to the contrary, Nurse Cain is entitled to summary judgment as a matter of law.

## VII. REQUEST THAT SPECIAL REPORT BE TREATED AS MOTION FOR SUMMARY JUDGMENT.

A.  <u>Summary Judgment Standard</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Nurse Cain moves this Court to enter summary judgment in her favor, because, as is more particularly shown above, there is no genuine issue as to any material fact and she is entitled to judgment as a matter of law.

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Reeves*, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299. "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (*en banc*) quoting *Massachusetts School of Law v. American Bar*, 142 F.3d 26, 40 (1st Cir. 1998).

9

B.  Motion for Summary Judgment

Nurse Cain respectfully requests that this honorable Court treat this Special Report as a motion for summary judgment and grant unto her the same.

*(signature)*
Daniel F. Beasley
Robert N. Bailey, II

LANIER FORD SHAVER & PAYNE P.C.
200 West Side Square, Suite 5000
P.O. Box 2087
Huntsville, Alabama 35804
(256) 535-1100

## CERTIFICATE OF SERVICE

I hereby certify that on this the 23 day of March, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Scott W. Gosnell, Esq.
Webb and Eley
P.O. Box 240909
Montgomery, AL 36124-0909

and I hereby certify that I have mailed by United States Mail, postage prepaid, the document to the following non-CM/ECF participant:

Joe Mitchell Dorsey
Covington County Jail
290 Hillcrest Drive
Andalusia, AL 36420

*(signature)*
Of Counsel